## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Robert Drake,<br><br>         **Plaintiff,**<br><br>vs.<br><br>Wayne Stenehjem, Attorney General of the State of North Dakota, in his official capacity, City of Valley City, North Dakota; Dave Carlsrud, President, in his official capacity; Duane Magnuson, Michael Bishop, Jeffery Erickson, and Dick Gulmon, Commissioners, in their official capacities,<br><br>         **Defendants.** | Case No.: 1:20-cv-00231 |

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

[¶ 1] THIS MATTER comes before this Court upon Defendants City of Valley City, North Dakota ("City"); Dave Carlsrud, President, in his official capacity; Duane Magnuson, Michael Bishop, Jeffrey Erickson, and Dick Gulmon, in their official capacities (collectively with the City, "City Defendants") Motion for Summary Judgment filed on July 12, 2022.  Doc. No. 31. Plaintiff Robert Drake ("Drake") filed a Response on September 8, 2022. Doc. No. 43. The City Defendants filed a Reply on September 29, 2022. Doc. No. 47.

[¶ 2] Also before the Court is Drake's Cross Motion for Summary Judgment filed on October 28, 2022.  Doc. No. 48. The City Defendants filed a Response on November 18, 2022. Doc. No. 50. Drake declined to submit a Reply.

[¶ 3] For the reasons set forth below, the City Defendants' Motion for Summary Judgment is **GRANTED** and Drake's Cross-Motion for Summary Judgment is **DENIED**.

## BACKGROUND

[¶ 4]    This is the case of a disgruntled man who was frustrated he was not permitted to make every single point he wanted to the Valley City Commission. Drake alleges the City violated his and Lloyd Nelson's ("Nelson") First Amendment rights to speak at City Commission meetings. See Doc. No. 1.  For years, Drake attended City Commission meetings on several occasions to ask questions, make statements concerning the City's budget, employees, projects, and legislative items.  Id. at ¶ 24. On occasion, Drake and Nelson were asked not to speak, not to question the committee, or asked to leave the podium at City Commission meetings. See id.

[¶ 5]    The City implemented a policy to regulate the public's participation in City Commission meetings, which was based on the North Dakota Attorney General's Open Meeting Manual ("OMM"). Doc. Nos. 33, ¶ 6, 33-1, p. 67. This Court has already concluded the OMM is an "interpretation of case law, state statutes, past Attorney General opinions, and administrative rules regarding open records and meetings." Doc. No. 23, ¶ 6. The Attorney General's OMM indicates, "[t]he purpose of the open meetings law is to give members of the public access to the meetings of a governing board of a public entity but that access does not give members of the public the right to participate or speak at the public meeting." North Dakota Office of Attorney General, Open Meetings Manual, p. 12, found at https://attorneygeneral.nd.gov/sites/ag/files/documents/ OpenMeetingsManual.pdf; see also Doc.  No. 33, p. 2 (noting the OMM is available for review at the web address); Doc. No. 33-1, p. 67 (memo from City Attorney Marl Martineck to Mayor Dave Carlsrud explaining the OMM and quoting the same); Doc. No. 34.

[¶ 6]    The Public Comment section of the City Commission agenda provides guidance based upon the OMM:

Attorney General's "A Citizen's Guide to North Dakota Open Records & Open Meetings Laws" *A member of the public does not have the right to speak to the

*governing body at an open meeting. The public is only entitled to see and hear what happens at a meeting, and to record or broadcast those observations.*

- No personal attacks to persons present or not

- No inflammatory language used during time that you have the platform

- 5 minute maximum or as directed by the chair

- Thank you for participating in City Government.

Doc. No. 33, p. 2. On May 19, 2008, the City adopted the Attorney General's OMM in their Rules of Order and Decorum Applicable to Speaking at Regular Open Meetings of the Valley City Commission, adopting the following policy:

1. No longer than five minutes will be allowed for the presentation of any agenda item to the Commission by an individual other than a City official or employee, unless additional time is given by the presiding officer or by a majority vote of the City Commission.  The comments will be relevant to and focused upon the agenda item.

2. General public participation and comment apart from agenda items will be scheduled for all regular open meetings.  A five minute time limit will also apply to such participation and comment.  Those wishing to speak must place their name and the subject to be addressed on a sign in sheet prior to the meeting.  The presiding officer will allow comment if the subject matter is considered relevant to current city business.

Doc. No. 33, pp. 2-3 (this policy can be viewed at https://www.valleycity.us/commission).

[¶ 7]   Disruptive individuals or those who violate the City Commission's policies, rules, or procedures will be informed they may be subject to removal from the meeting if they continue to be disruptive or violate the rules. Id. at p. 3. The City commission has taken certain actions to enforce its authority under its policies:

- The City Commission sets the agenda for the City Commission Meeting. All Agenda items to be discussed at a regular City Commission Meeting shall be submitted to the office of the City Auditor of the City of Valley City by 5:00 PM on the Wednesday prior to that City Commission meeting.

- Informed the general public that open meetings law do not give members of the public the right to participate or speak at the public meeting but the individual could speak with Commissioners or City staff following the meeting.

- The City Commission, to assess whether proffered questions are relevant to the agenda, may require preapproval of questions or for questions to be submitted in writing prior to a City Commission meeting.

- When the City Commission permits the general public to speak, the City Commission limits the comments to items and topics relevant to the items on the agenda.

Id.

[¶ 8]    On June 21, 2019, the City Attorney issued a letter to City officials explaining the City's purpose behind its open meeting policy allowing public access to City commission meetings. Id. at pp. 3-4. He indicated existing law does not give citizens a right to speak at a public meeting. Doc. No. 33-1, p. 67. In his letter, the City Attorney stated it is City policy to provide time for public comment subject to the limitations adopted in the Rules of Order and Decorum Applicable to Speaking at Regular Open Meetings of the Valley City Commission. Id.

[¶ 9]    Drake took numerous actions to participate in the City Commission meetings, including the following relevant actions:

1. On April 21, 2015, Drake submitted an agenda request asking to discuss prices associated with two properties bought by the City as well as garbage collection rates. Id. at p. 2

2. Around October 27, 2015, Drake submitted an agenda request asking to publicly demand Valley City Chief of Police, Fred Thompson, be fired at the November 9, 2015, City Commission meeting. Id. at p. 3. The next day, Drake withdrew his request. Id.

3. Around November 3, 2015, Drake asked to place on the agenda his request to demand the Valley City Commission terminate the Chief of Police's employment. Id. at p. 4. He withdrew his request on November 5, 2015, and asked that it be placed on the November 17, 2015, agenda. Id. at p. 5. Ultimately, after discussing the matter with the City Attorney, this item was removed from the agenda. Id. at pp. 15-19. The City Attorney noted the need to properly investigate complaints against City employees. Id.

4. Around May 5, 2016, Drake submitted an agenda request for the May 17, 2016, Commission meeting to discuss Officer Swenson's regular and overtime pay, claiming the officer may have committed a class B felony. Doc. No. 33-1, p. 51. This item was removed from the agenda. Id. at p. 60.

5. On February 11, 2016, the City Commission held a special meeting. The purpose was to discuss how to handle employee grievances filed against the Mayor. There was a discussion of hiring an outside neutral attorney to handle the grievance process. Drake spoke at this special meeting. He argued the grievances were not valid and failed to follow the proper procedure. The Commissioners discussed the issue he raised and Drake threatened a recall election if outside counsel was hired. Despite this threat, the Commission decided to hire an outside attorney to investigate the validity of the grievances based on Drake's request. If they were valid, an attorney would be hired to initiate the grievance process. Doc. No. 33-2 (conventionally filed audio recording of this special meeting). See also Doc. No. 33-1, p. 48 (letter from Drake to Commissioner Pederson thanking him for giving him the chance to speak at the February 11, 2016 meeting); Id. at p. 49-50 (letters from Drake to Commissioners Magnuson and Luke apologizing for some of the things he said at the February 11, 2016 meeting).

6. Drake submitted another agenda request around January 5, 2018. This time, Drake wanted to have a public discussion of why the Commission agreed to pay former Police Chief Thompson $100,000 in severance pay, knowing of alleged sexual harassment claims against him. Id. at p. 61. There were no public comments taken at the January 16, 2018, meeting Doc. No. 33, p. 4.

7. At the December 18, 2018, meeting, the Commission met to discuss, among other things, the "Valley City-Barnes County Development Corporation request for $250,000 for a Two Year Workforce Development Program, funded through City Sales Tax Dedicated to Economic Development." Doc. No. 33-1, p. 65. Drake asked about the availability of this program for high school students. See id. Jennifer Feist informed him it was. Id. At this meeting, the City Commission also approved an engineering agreement regarding the 5th Avenue NW reconstruction in an amount not to exceed $118,500. Drake was allowed to ask "if property owners will be able to protest out the special assessments." Id. The City Auditor confirmed protest was an option. Id. Drake then asked if he could "protest out the widening of the street only." Id. Commission "President Carlsrud stated the wider street without parking is a reason to hold another public meeting." Id.

[¶ 10]  In response to Drake's request to discuss certain allegations against Chief of Police, the City Attorney and City Administrator came up with a proposed policy to create a process for citizens to lodge complaints against city employees and personnel. Id. at pp. 6-8. This process was intended to protect the due process rights of the city employees and personnel. Id. at p. 6 ("[I]n the

event that a citizen complaint would eventually lead to a court action involving that City employee, there is a very real possibility that a Court could find the City denied the City employee or City Department head of his/her constitutional Due Process rights."). According to the City Attorney, prior to terminating an employee, due process requires notice of the intent to fire the employee and an opportunity for that employee to be heard. Id. at p. 8. According to the City Attorney, if Drake were permitted to lodge a complaint against the Chief of Police without a formal written complaint and the Chief of Police being given an opportunity to respond, permitting Drake to lodge the complaint at an open Commission meeting "would violate the Due Process rights of the Police Chief." Id.

[¶ 11]  Drake submitted an affidavit in opposition to the City's Motion for Summary Judgment. Doc. No. 45-1.  Drake repeatedly alleged the City denied him the opportunity to raise his concerns and to discuss issues at public meetings.  Id. at 1, 4.  He asserts in his affidavit that the City improperly applied state statutes, commission policy and legal opinions from the City Attorney in violation of his First Amendment rights "to be heard at a public city commission[] meeting."  Id. at 1. Importantly, little of these allegations are substantiated with a documentary record.[1]

---

[1] The City Defendants object to portions paragraphs 2, 3, 6, 7, 9, 9, 16, 17, and 18-21 of the affidavit because it violates Rule 56(c)(4) of the Federal Rules of Civil Procedure because (1) it largely fails to provide facts based on personal knowledge; (2) sets out inadmissible facts; and (3) contains numerous legal conclusions and opinions guised as facts. Doc. No. 47, pp. 1-2. The City Defendants also argue the affidavit contains a number of conclusory facts but fail to reference anything other than this "self-serving affidavit." Id. at p. 3. The Court agrees with the City Defendants. Plaintiff was required to submit more than a self-serving affidavit to avoid summary judgment because he is not permitted "to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Gander Mountain Co. v. Cabela's, Inc., 540 F.3d 827, 831 (8th Cir. 2008) (quoting Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006)) ("'[A] properly supported motion summary judgment is not defeated by self-serving affidavits.'").

[¶ 12]   Drake's Complaint alleges four claims.  Doc. No. 1.  Drake brought four claims pursuant

42 U.S.C. § 1983: (1) a violation of his First Amendment rights; (2) a request for declaratory relief;

(3) a request for injunctive relief; (4) and a request for attorney's fees.  Doc. No. 1. Claims two,

three, and four are contingent on whether there has been a violation of his First Amendment rights

and are more properly considered relief rather than causes of action. Drake alleges the City violated

his and Nelson's First Amendment rights by (1) refusing to allow them to speak at council

meetings; (2) imposing time restrictions on their speech; (3) threatening their removal from council

meetings; (4) preventing display of a placard on live broadcast; and (5) maintaining a file regarding

their interactions with the city council. This Court has jurisdiction under 28 U.S.C. §§ 1331,

1343(a)(3).

## DISCUSSION

### I.      Summary Judgment Standard

[¶ 13]   Summary judgment is appropriate when the evidence, viewed in the light most favorable

to the non-movant, indicates there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it may affect

the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual

dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-

movant.  Id.  "[W]e give the nonmoving party the benefit of all reasonable inferences which may

be drawn without resorting to speculation."  TCF Nat'l Bank v. Mkt. Intelligence, Inc., 812 F.3d

701, 707 (8th Cir. 2016) (internal quotations omitted).

[¶ 14]   The purpose of summary judgment is to determine whether the evidence presents sufficient

disagreement as to warrant submission of the case to a jury or whether the evidence is so one-sided

that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418

F.3d 820, 832 (8th Cir. 2005).  The movant bears the burden of informing the Court of the basis for its motion and must identify portions of the record which demonstrate the absence of a genuine issue of material fact.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011).  The non-movant may not rely on allegations or denials made in its pleading, rather its response must set out specific facts showing a genuine issue for trial.  Id.; Fed. R. Civ. P. 56(c)(1)(A).  There is no genuine issue for trial and summary judgment is proper when the record, taken as a whole and viewed in the light most favorable to the non-movant, could not lead a rational trier of fact to find in favor of the non-movant.  Diesel Mach., Inc., 418 F.3d at 832.

## II.     Drake Lacks Standing to Pursue Nelson's Claims

[¶ 15]  Throughout the Complaint, Drake references Nelson's interactions with the City commission and seeks relief for the City Defendant's alleged violations of Nelson's First Amendment rights.  Doc. No. 1.  Drake alleges that Nelson's rights were violated when the City Commission asked Nelson to leave the lectern, required preapproval of his questions to the commission, and by cutting his personal attacks against City employees short.  Doc. No. 45-1 at 6-9.  The City Defendants argue Drake lacks standing to assert claims on behalf of Nelson. The Court Agrees with the City Defendants.

[¶ 16]  Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016).  The principle of standing is to determine whether a party is sufficiently affected in order to present a justiciable controversy before the court.  United Fin. Cas. Co. v. Penrod, 2014 WL 11531336, at *4 (D.N.D. 2014).  The Court does not have jurisdiction to enforce private rights unless one has a real interest in the cause of action.  Id. at *5.  Standing ensures a litigant has a personal stake in the outcome of the matter.  See Potter v. Norwest Mortg., Inc., 329 F.3d 608, 611 (8th Cir. 2003).  The United

States Supreme Court held that federal courts should hesitate to resolve controversies based on the rights of third parties not privy to the litigation.  Singleton v. Wulff, 428 U.S. 106, 113 (1976).

[¶ 17]  The parties do not dispute that Nelson "passed away before this lawsuit was filed."  Doc. No. 1 at 2-3.  However, Drake's Complaint contains several references to Nelson's interactions with the City commission, seeks this Court's declaration that Nelson's rights have been violated and requests attorney's fees for time "expended" on the deceased's claims.  Id. at 10, 42. Drake cannot invoke this Court's jurisdiction to enforce the rights of the deceased because he has no legal interest in Nelson's claims.  See Warth v. Seldin, 422 U.S. 490, 499 (1975) ("[T]his Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").  Nelson is not named a party to this action because he was deceased before Drake filed the Complaint.  Doc. No. 1 at 1.  This Court cannot resolve controversies based on the rights of Nelson as he was deceased prior to this action's commencement.  See Singleton, 428 U.S. at 114 ("[O]ne may not claim standing . . . to vindicate the constitutional rights of some third party.").  Therefore, the claims asserted by Drake regarding the rights of Nelson are hereby **DISMISSED**.

### III.    Drake's First Amendment Claim

[¶ 18]  The Complaint alleges the City Defendants violated Drake's right to speak before the City Commission and to voice his concerns regarding City funds, taxation and conduct of City employees.  Doc. No. 1.   The City asserts that it is not subject to civil liability under 42 U.S.C. § 1983 due to qualified immunity.  Doc. No. 32 at 11.  The City also asserts Drake cannot establish a violation of his First Amendment rights because the City has a legitimate government interest in conducting orderly government meetings.  Id. at 13, 16-24.  In response to Drake's Cross-Motion for Summary Judgment, the City argues it is entitled to summary judgment over Drake's official

capacity claims. Doc. No. 50, pp. 13-15. The Court agrees the Complaint must be dismissed because the claims are against the City Defendants in their official capacity and no reasonable fact-finder could conclude a constitutional violation occurred.[2]

[¶ 19]   The first question the Court must resolve is whether this is a case against the City Defendants in their official capacity, individual capacity, or both. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999) ("Public servants may be sued under section 1983 in either their official capacity, their individual capacity, or both."). The principal question governing claims under 42 U.S.C. § 1983 is whether a violation of a right secured by the United States Constitution occurred under the color of state law.  Albright v. Oliver, 510 U.S. 266, 271 (1994). A party alleging a constitutional injury under 42 U.S.C. § 1983 must prove (1) a violation of a constitutional right, (2) by a state actor, (3) who acted with the requisite culpability and causation to violate a right secured by the Constitution.  Hart v. City of Little Rock, 432 F.3d 801, 804 (8th Cir. 2005).   Section 1983 does not create any rights; rather, it is a method for asserting constitutional rights.  Albright, 510 U.S. at 271.  Section 1983 claims do not provide a remedy unless a constitutional violation has occurred.  See Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000).

[¶ 20]   "A plaintiff may assert § 1983 claims against a public official acting in his individual capacity and in his official capacity." Baker v. Chisom, 501 F.3d 920, 923 (8th Cir. 2007). When a complaint is silent as to what capacity it sues the defendant under, the Eighth Circuit has established a clear presumption the claim is against the defendants in their official capacities only.

---

[2] Although this issue was first raised in the City's Response brief to Drake's cross-motion for summary judgment and the Court would not ordinarily consider summary judgment arguments raised for the first time in similar circumstances, this issue is ultimately dispositive of this case and must be resolved.

Id. (quoting Egerdahl v. Hibbing Cmty. Coll., 72 F.3d 615, 619 (8th Cir. 1995)). In other words, unless the complaint specifically names a defendant in his or her individual capacity, courts presume it is an official capacity claim only. Id. Indeed, the Eighth Circuit has been clear its caselaw "require[s] more than ambiguous pleading" and that "a 'cryptic hint' in plaintiff's complaint is not sufficient." Id. at 924. "[S]pecific pleading of individual capacity is required." Andrus ex rel. Andrus v. Arkansas, 197 F.3d 953, 955 (8th Cir. 1999). "Because section 1983 liability exposes public servants to civil liability and damages, [the Eighth Circuit has] held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants." Johnson, 172 F.3d at 535.

[¶ 21]  Here, there is no question Drakes claims against the City Defendants are in their official capacities.[3] The Complaint's caption indicates the suit is against them in their official capacities and the redress sought does not include money damages against them individually. See Doc. No. 1, pp. 1, 38-43. There is nothing—not even a "cryptic hint"—in the Complaint to suggest a suit against the Defendants in anything other than their official capacities. See Baker, 501 F.3d at 925. As such, this suit is against the City Defendants in their official capacities only.

[¶ 22]  In the Eighth Circuit, "[a] suit against a government official in his or her official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'" Baker, 501 F.3d at 925 (quoting Monell v. Dep't of Social Services, 436 U.S. 658, 690 n.55 (1978)); see

---

[3] The Parties spend a vast majority of their time arguing qualified immunity against the named defendants. The Court does not reach this issue because it is inappropriate when the claims are clearly against each Defendant in their official capacity. See Bankhead v. Knickrehm, 360 F.3d 839, 844 (8th Cir. 2004) ("Qualified immunity is a defense only against a claim in one's individual capacity."); Johnson 172 F.3d at 535 ("Qualified immunity is not a defense available to governmental entities, but only government employees sued in their individual capacity. And because the pleadings are construed as a suit against the county, the only issue raised on appeal, qualified immunity, is irrelevant.").

also Veatch v. Bartels Lutheran Home, 627 F.3d 1254, 1257 (8th Cir. 2010) ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental agency."). To sustain an official capacity claim, Drake "must prove that the [City] '*itself* caused the constitutional violation at issue.'" Parrish v. Ball, 594 F.3d 993, 997 (8th Cir. 2010) (quoting Elder-Keep v. Aksamit, 460 F.3d 979, 986 (8th Cir. 2006)). It is well-established "[a] political subdivision may not generally be held vicariously liable under section 1983 for the unconstitutional acts of its employees." Johnson, 172 F.3d at 536 (citing Monell, 436 U.S. at 694). Indeed, "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' Monell, 436 U.S. at 691, (2) an unofficial 'custom' id. at 690-91; or (3) a deliberately indifferent failure to train or supervise, see City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)." Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013). The Complaint only asserts claims of an unconstitutional official policy or custom. See Doc. No. 1, ¶¶ 24-26. The Court will address those two issues below.

[¶ 23]   As an initial matter, the Court will dismiss the claims against the named Defendants—Dave Carlsrud, Duane Magnuson, Michael Bishop, Jeffrey Erickson, and Dick Gulmon—in their official capacities as redundant of those against the City itself. See Veatch, 627 F.3d at 1257 ("A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity. Thus, the court properly dismissed the claim against Leonard as redundant of the claim against the City." (internal citation omitted)). Accordingly, each claim as alleged against Dave Carlsrud, Duane Magnuson, Michael Bishop, Jeffery Erickson, and Dick Gulmon in their official capacities are **DISMISSED with prejudice** as redundant of those against the City of Valley City.

###### 1.   City Policy

[¶ 24]   Drake argues the Commission's use of the policy to justify denying him the opportunity to address the commission shows the policy itself is unconstitutional. The City argues the policy is constitutional on its face as a content neutral time, place, and manner restriction on speech at City Council meetings because the City Council meetings are limited public forums. The Court agrees with the City.

[¶ 25]   The Court has already alluded the City Council meetings are limited public forums. See Doc. No. 23, ¶ 15 ("When a State, like North Dakota, opens certain meetings of its political subdivisions to the public, those meetings are typically designated 'limited public forums,' and, therefore, 'subject to reasonable limitations as to the time, place, and manner of speech.'" (quoting Plamore v. City of Pacific, 851 F.Supp.2d 1162, 1172 (E.D. Mo. 2010)). The Supreme Court has noted, "[p]lainly, public bodies may confine their meetings to specified subject matter and may hold non public sessions to transact business." City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Emp. Resl. Comm'n, 429 U.S. 167, 175 n.8 (1976). In Wright v. Anthony, the Eighth Circuit concluded a five-minute time limit on presenting to a United States Congressman was a reasonable time, place, and manner restriction. 733 F.2d 575, 577 (8th Cir. 1984). Indeed, it is well-established "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." Minn. State Bd. For Cmty Colls. v. Knight, 465 U.S. 271, 284 (1984). When looking at the reason for excluding certain speech in a limited public forum, "[t]he government's purpose is the controlling consideration." Id.

[¶ 26]   Time, place, and manner restrictions are valid if they do not reference the content of the regulated speech, "are narrowly tailored to serve a significant governmental interest, and they leave open ample alternative channels for communication of the information." Clark v. Cmty For

Creative Non-Violence, 468 U.S. 288, 293 (1984). The main inquiry "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989). Even when a regulation incidentally regulates some speakers but not others, the regulation is constitutional on its face if it is neutral. Ward, 491 U.S. at 791.

[¶ 27]   Here, the policy at issue is content neutral and facially constitutional. It limits speakers to address agenda items and keep their time under five minutes. Doc. No. 32, p. 3. The presiding commissioner can extend the time if appropriate. Id. If a speaker wishes to address a non-agenda item, it must be scheduled for another open meeting. Id. The time the speaker will have to address that non-agenda item would be five minutes. Id. Importantly, there are no content restrictions on what agenda items may be discussed and what a citizen may request to be discussed at a regular open meeting. See id. The policy simply sets out rules governing how an individual may address the City Council at appropriate times without any reference to a specific type of prohibited speech. This is clearly content neutral and the policy is not unconstitutional on its face. See Ward, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."); Wisconsin Emp. Resl. Comm'n, 429 U.S. at 175 n.8 (noting municipalities may limit their public meetings to specific tops); Wright, 733 F.2d at 577 (holding a five-minute time-limit was a reasonable time, place, and manner restriction).

[¶ 28]   Accordingly, to the extent Complaint alleges a claim the City's Policy is unconstitutional, this claim fails as a matter of law and is **DISMISSED with prejudice**.

###### 2.  City Custom

[¶ 29]  Drake contends the City had an unconstitutional custom of preventing him from addressing the City Council and placing matters on the meeting agendas to discuss at future meetings.[4] The City argues there is no evidence of an unconstitutional custom of prohibiting Drake from speaking at City Council meetings.

[¶ 30]  To establish liability for the City for an unconstitutional custom, Drake must demonstrate:

   1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

   2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

   3)  That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

Johnson v. Douglas County Medical Dept., 725 F.3d 825, 828 (8th Cir. 2013) (quoting Thelma D. ex rel. Delores A. v. Bd. Of Educ. Of City of St. Louis, 934 F.2d 929, 932-33 (8th Cir. 1991)).

[¶ 31]  This claim involves the City's repeated refusal to allow Drake to speak on the issues of firing the Chief of Police as he had requested of the City prior to its meetings. Insofar as Drake asserts a claim for an unconstitutional custom of excluding Drake from speaking at City Commission meetings, Plaintiff's claim necessarily fails because prohibiting Drake from speaking was a reasonable time, place, and manner restriction on speech in a limited public forum.

[¶ 32]  Restrictions in a limited public forum "must only be reasonable and viewpoint neutral." Bowman v. White, 444 F.3d 967, 976 (8th Cir. 2006). (internal citation omitted).  A limited public forum is generally "not open for public expression, but that the government has opened for use for

---

[4] The Court construes his argument as such. He never specifically makes this argument because he does not provide any analysis on the claims as official capacity claims. He focuses solely on the arguments as though he alleged individual capacity claims.

free speech only on a limited period of time, a limited topic, or a limited class of speakers." Forbes v. Ark. Educ. Television Commc'n Network Found., 22 F.3d 1423, 1429 (8th Cir. 1994) (citations omitted).

[¶ 33]   As a limited public forum, the City was well within its rights to customarily prohibit speaking on certain topics it deemed inappropriate for City Commission meetings. See id. The City's purported custom of excluding discussion of internal personnel issues, such as whether to terminate the employment of the Chief of Police were taken off the table by the City Commission because they were concerned about violating the Chief of Police's due process rights. Because this case involves a limited public forum, the government's purpose of prohibiting Drake from raising certain personnel issues relating to the Chief of Police at City Commission meetings governs this dispute. See Knight, 465 U.S. at 284 ("The government's purpose is the controlling consideration."). The purpose of excluding Drake's comments was because they believed personnel issues should be investigated privately before bringing the matter to the public because of significant due process concerns. Contrary to Drake's repeated assertions, it is well-established "[t]he Constitution does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." Id. In short, the purported "custom" of excluding Drake from discussions at City Commission meetings was justified under the circumstances.

[¶ 34]   Clearly, the purpose of this custom was to prevent unsubstantiated personal attacks on city employees from occurring. While, the First Amendment recognizes the importance of unencumbered debate as to issues of public concern, Frisby v. Schultz, 487 U.S. 474, 479 (1988), an individual engaged in protected speech of public concern may not leverage this protection to make personal attacks on public officials, Dunn v. Carroll, 40 F.3d 287, 293 (8th Cir. 1994). When such speech turns into a caustic personal attack on a public official, the speech is no longer

"deemed relevant to a matter of public concern" and thus no longer protected. Id. "[T]he First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired." Palmore, 851 F.Supp.2d at 1171 (internal quotations omitted). Rather the right to express a view depends on the nature of the forum. See Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 802 (1985) ("[T]he extent to which the Government can control access depends on the nature of the relevant forum.").

[¶ 35]  Indeed, the United States Supreme Court has long recognized that governments have a significant interest in conducting orderly, efficient, and dignified public meetings. City of Madison, Joint Sch. Dist., 429 U.S. at 175 n.8. "Reasonable time, place and manner restrictions on the exercise of first amendment rights are not repugnant to the Constitution." Wright, 733 F.2d at 577. Time limitations on speech, and limitations not based on the content of speech serve a significant government interest in conducting orderly meetings and are thus reasonable. See id. ("Reasonable time, place and manner restrictions on the exercise of first amendment rights are not repugnant to the constitution.").

[¶ 36]  Here, Drake was not prevented from addressing the City Commission. Rather he was only limited to specified time intervals for speech, agenda subject matter requirements and City rules prohibiting personal attacks. Drake concedes the City's speech restrictions are content-neutral, however he argues without specific evidence that the City's restrictions are not applied in a content neutral manner. Doc. No. 45 at 25. The record, however, is clear the City adopted its procedural restrictions governing meeting participation in reliance on the North Dakota Attorney General's OMM and out of due process concerns relating to the termination of City employees.  The City's refusal to allow Drake to address the commission to (1) demand firing the Chief of Police for his purported sexual harassment; (2) make a citizen's complaint against a police officer's

compensation; and (3) discuss the police chief's severance pay are all consistent with the City's content neutral restrictions. Ward, 491 U.S. at 791; see also Wright, 733 F.2d at 577 (reasonable restrictions on rights are not repugnant to the Constitution); see City of Madison, Joint Sch. Dist., 429 U.S. at 175 (stating orderly, efficient, and dignified public meetings are significant government interests). Because the actions of the City Commission in this case were entirely reasonable, the limitations placed on Drake's speech were not unconstitutional. See Wright, 733 F.2d at 577 ("Reasonable time, place and manner restrictions on the exercise of first amendment rights are not repugnant to the constitution."). As such, there was no unconstitutional custom that prohibited Drake from addressing the County Commission.

[¶ 37]  Likewise, the record conclusively shows the City was not deliberately indifferent in this case. In determining whether the City acted with deliberate indifference, the Court looks to whether the City disregarded "its known or obvious consequences." Bd. Of Cnt'y Com'rs of Bryan Cnt'y Okl. v. Brown, 520 U.S. 397, 407 (1997). "Thus, only where a municipality's failure to adopt adequate safeguards was the product of deliberate indifference to the constitutional rights of its inhabitants will the municipality be liable for an unconstitutional policy under § 1983." Szabla v. City of Brooklyn, Park, Minn., 486 F.3d 385, 390 (8th Cir. 2007).

[¶ 38]  Here, the City carefully decided whether they were permitted to prohibit Drake from speaking at the various City Council meetings. They looked to the Policy, which fairly and accurately reflected the North Dakota Attorney General's guidance. This Court previously found the OMM was constitutional. Prior to making their decisions regarding Drake, the City also consulted with the City Attorney. who advised the City Commissioners to adopt a policy to address citizen complaints on the employment of City employees. This was out of due process concerns. In all, this shows the City carefully reflected on the impact their decision would have on Drake

and they made a reasoned decision, not a deliberately indifferent one. The City Commission clearly sought advice and counsel on how to proceed with Drake. Drake's claims against the City Defendants fail as to their purported deliberate indifference.

[¶ 39]  Accordingly, the undisputed material facts show Drake's First Amendment Claim for an unconstitutional custom of the City fails. This claim is, therefore, **DISMISSED with prejudice**.

<u>**CONCLUSION**</u>

[¶ 40]  The undisputed facts show the City and its employees acted reasonably and gracefully in the face of Drake's repeated rudeness and unjustified requests of the City Commission. The Policy is plainly constitutional. The City's decisions to prohibit Drake from addressing the City Commission regarding firing the Chief of Police were both reasonable and likely necessary to protect the Chief of Police's due process rights. Implementing a policy governing complaints against City employees likewise provided Drake an opportunity to bring the alleged issues with the Chief of Police to the City Commission's attention in manner consistent with the Chief of Police's due process rights.

[¶ 41]  Accordingly, for the reasons set forth above, the City's Motion for Summary Judgment is **GRANTED** and Drake's Motion for Summary Judgment is **DENIED**. The Complaint[5] is, therefore, **DISMISSED with prejudice**.

---

[5] The "claims" for declaratory relief, injunctive relief, or attorneys fees necessarily fail because they were contingent on a finding of a possible constitutional violation. As the Court concluded, there was no constitutional violation in this case.

[¶ 42]  **IT IS SO ORDERED**.

[¶ 43]  **LET JUDGMENT BE ENTERED ACCORDINGLY**.

DATED September 15, 2023.

Daniel M. Traynor, District Judge
United States District Court